UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IRVING ALBERT HARRELL, II,          Case No. 18-10698

        Plaintiff,                Stephanie Dawkins Davis

v.                                    United States District Judge

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

**OPINION AND ORDER**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 18)**

I.    **PROCEDURAL HISTORY**

    A.    <u>Proceedings in this Court</u>

On February 28, 2018, plaintiff Irving Albert Harrell, II filed the instant suit.

(ECF No. 1). The suit challenges the Commissioner's unfavorable decision

denying Harrell's claims for a period of disability, disability insurance benefits,

and supplemental security income benefits. (ECF No. 3). This matter is before the

court on the parties' cross-motions for summary judgment. (ECF Nos. 13, 18).

    B.    <u>Administrative Proceedings</u>

Harrell filed an application for a period of disability, disability insurance

benefits (DIB), and supplemental security income (SSI) on May 5, 2015, alleging

disability beginning on December 10, 2010. (Tr. 12).[1] The alleged onset date

(AOD) was later amended to July 15, 2014. (Tr. 279). His claims were initially

disapproved by the Commissioner on May 23, 2015. Harrell requested a hearing

and on December 16, 2016, he appeared with counsel before Administrative Law

Judge ("ALJ") Dennis M. Matulewicz, who considered the case *de novo*. (Tr. 274-

301). In a decision dated April 5, 2017, the ALJ found that Harrell was not

disabled from the amended AOD through the date of the decision. (Tr. 9-24). The

ALJ's decision became the final decision of the Commissioner when the Appeals

Council, on February 20, 2018, denied Harrell's request for review. (Tr. 5-8);

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, plaintiff's motion for summary judgment is

**DENIED**, defendant's motion for summary judgment is **GRANTED**, and the

findings of the Commissioner are **AFFIRMED**.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Harrell was born in 1971 and was 39 years old on the alleged disability onset

date. (Tr. 23). His date last insured is June 30, 2014. (Tr. 14). Harrell completed

two years of college and primarily worked as a custodian and general laborer. (Tr.

---

[1] The Administrative Record appears on the docket at entry number 12 and the supplemental transcript can be found at docket entry 17. All references to the transcript are identified as "Tr."

23, 100). Harrell lives with his mother and he stopped working on December 10, 2010 because of his medical conditions. (Tr. 285, 99).

In reviewing his claim, the ALJ applied the five-step disability analysis and found at step one that Harrell had not engaged in substantial gainful activity since July 15, 2014, the amended AOD. (Tr. 14). At step two, the ALJ found Harrell's obesity, asthma, diabetes mellitus, and degenerative disc disease to be "severe" within the meaning of the second sequential step. (Tr. 14). The ALJ found that Harrell's depression was a nonsevere medically determinable impairment. (Tr. 15-18). However, at step three, the ALJ found no evidence that Harrell's impairments singly or in combination met or medically equaled one of the listings in the regulations. (Tr. 17).

Next, the ALJ assessed Harrell's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can never use ladders, ropes, or scaffolds. He can occasionally use ramps and stairs, stoop, kneel, crouch, crawl, or balance. He must avoid even moderate exposure to extreme heat, extreme cold, wetness, humidity, and vibrations; and avoid concentrated exposure to fumes, odors, dust, gases, or poor ventilation. He should never work with hazards including dangerous and unprotected machinery or work at unprotected heights. He can occasionally bend, twist, and turn at the

> waist. The claimant requires simple, unskilled work with an SVP rating of one or two; routine work that does not require changes or adaptations in work settings or duties more than once per month; and jobs without production quotas mandating a specific number of pieces per hour or with a down-line co-worker depending on the claimant's productivity.

(Tr. 18). At step four, the ALJ found that Harrell was unable to perform any past relevant work. (Tr. 23). At step five, the ALJ denied Harrell benefits because he found that there were jobs that exist in significant numbers in the national economy that he could perform. (Tr. 23-24).

## III. DISCUSSION

### A. Standard of Review

Congress created the social security claims framework as a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews to determine if the agency exceeded statutory authority or acted in an arbitrary and capricious manner. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process calls for a state agency to make an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If the administrative review process results in a denial of benefits, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

This Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Legal Framework for Review

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  DIB benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; SSI benefits are available to poverty

stricken adults and children who become disabled.  F. Bloch, Federal Disability

Law and Practice § 1.1 (1984).  While the two programs have different eligibility

requirements, both "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

Disability is determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920. Essentially, the ALJ must determine whether: (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform. (*Id*.). "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner must show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

C.    Analysis and Conclusions

1.    *Recontacting Plaintiff's Treating Physician*

Harrell first argues that the ALJ was required to recontact his treating physician because his records pertaining to his asthma treatment were not entirely legible and the ALJ noted the record "appear[ed]" to indicate certain things. According to Harrell, the ALJ's statements suggest that the records from his physician do not contain all the necessary information and a conflict or ambiguity exists, triggering the ALJ's duty to recontact under 20 C.F.R. § 1512(e).[2]  The Commissioner argues that the ALJ was not required to recontact his treating physician because that requirement was eliminated in 2012 and such a decision is now within the ALJ's discretion.  The Commissioner also contends that the presence of some illegible notes does not mandate remand where the record as a whole supports the ALJ's decision.  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 (6th Cir. 2010) (admitting that the medical records were only partially legible, consisting of phrases and not full sentences, but when viewing the entire record, the court determined this was sufficient to uphold the district court's conclusion).

---

[2] Harrell relies on a version of this regulation that was in effect from June 13, 2011 through March 26, 2012.

An ALJ may seek "additional evidence or clarification" if he "cannot reach a conclusion about whether" the claimant is disabled. 20 C.F.R. § 404.1520b(c)(1).[3] The regulation pertaining to recontacting medical sources was revised effective March 26, 2012, clarifying that the decision to recontact a source is within the discretion of the ALJ. The regulation provides, in pertinent part:

> We *may* recontact your treating physician, psychologist, or other medical source. We *may* choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence.

20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) (emphasis added). In other words, "ALJs now have discretion to decide whether to recontact." *Hollis v. Comm'r of Soc. Sec.*, 2015 WL 357133, *23 (E.D. Mich. Jan. 27, 2015). At the time of the decision, the ALJ could recontact a physician where the "administrative record contains insufficient information to reach a disability decision." *Weredick v. Comm'r of Soc. Sec.*, 2017 WL 4928649, *8 (E.D. Mich. Aug. 4, 2017), report and recommendation adopted, 2017 WL 4112341 (E.D. Mich. Sept. 18, 2017); *Thomas v. Comm'r of Soc. Sec.*, 2019 WL 2063836, *8 (E.D. Mich. Feb. 25, 2019), report and recommendation adopted, 2019 WL 1375520 (E.D. Mich. Mar.

---

[3] *See* version in effect from March 26, 2012 through March 26, 2017. This regulation has since been modified but the new version only applies to claims filed after March 26, 2017.

27, 2019) ("The ALJs now have the flexibility to decide whether to recontact the medical sources or choose another option available under these new regulations.").

Harrell has relied on an outdated version of § 404.1512.[4] Thus, as a matter of law, his argument that the ALJ was *required* to recontact his treating physician fails, as there is no longer a requirement mandating recontact in this instance. Further, the regulations in place at the time of the ALJ's decision state that only if the record evidence is insufficient to determine disability, or if the ALJ cannot reach a conclusion on disability, will the ALJ determine how to resolve the problem. In resolving the problem, the ALJ could, for example, recontact a medical source. *Thomas v. Comm'r of Soc. Sec.*, 2019 WL 2063836, at *9 (E.D. Mich. Feb. 25, 2019) ("The ALJ's findings and the medical records clearly support the determination that the difficult to read portions of Dr. Askar's medical records were not entirely illegible, and in any event there was otherwise substantial evidence to support the non-disability finding."). Here, Harrell does not argue that the record as a whole is insufficient to make a disability determination. Accordingly, Harrell's argument is unpersuasive.

---

[4] Harrell's counsel has been told as much in other cases in which she relied on an outdated version of the regulation in support of a similar argument. *McClaine v. Comm'r of Soc. Sec.*, 2018 WL 1309877, at *7 (E.D. Mich. Jan. 29, 2018); *Thomas v. Comm'r of Soc. Sec.*, 2019 WL 2063836, at *8 (E.D. Mich. Feb. 25, 2019); *Perry v. Comm'r of Soc. Sec.*, 2016 WL 6828673, at *4 (E.D. Mich. Feb. 1, 2016); *Humphries v. Comm'r of Soc. Sec.*, 2019 WL 3244284 (E.D. Mich. June 25, 2019), report and recommendation adopted, 2019 WL 3229132 (E.D. Mich. July 18, 2019).

Moreover, the ALJ's decision regarding Harrell's limitations due to his asthma is supported by substantial evidence. That is, the record as a whole supports the ALJ's conclusions regarding Harrell's asthma. For instance, Harrell's September 16, 2015 physical consultative examination with Dr. Prasad noted that his asthma was responsive to bronchodilators. (Tr. 177). In a related analysis, the Sixth Circuit has credited proof of responsiveness to bronchodilators as adequate evidence to discount a doctor's opinion suggesting more restrictive pulmonary functioning. Thus, it stands to reason that such evidence qualifies as substantial evidence supporting positive findings concerning pulmonary functioning. *See Brasseur v. Comm'r of Soc. Sec.*, 2013 WL 1896291, at *2 (6th Cir. May 7, 2013) ("The ALJ gave good reasons for disregarding the assessments made by [the treating physicians where] Brasseur's pulmonary function tests from February 2006 showed that he had a very good response to bronchodilators."). Additionally, Harrell's chest exam with Dr. Prasad was normal. (Tr. 177). Although there was some wheezing, he was not using accessory muscles of respiration, and his chest wall expansion was within normal limits and equal. (Tr. 177). Several treatment notes indicate that Harrell was generally assessed with uncomplicated, mild persistent asthma, with occasional notes of wheezing. (Tr. 202-203, 10/18/15; 204-205, 9/6/16; 206-207, 7/11/16; 208-209, 6/15/16; 315-316, 10/18/16). Some treatment notes indicate an "exacerbation" of Harrell's asthma. (Tr. 210, 5/18/16;

316-317, 9/8/16; 318, 8/11/16; *but see* 4/6/16 note of asthma with "exacerbation," but breathing was even and unlabored, chest had normal expansion, no rales, wheezing, or rhonchi). Yet, his asthma was generally noted to be controlled by medication, and he was directed to continue his medication as instructed. (Tr. 202, 10/18/16; 317, 9/8/16). He also reported improvements with medication changes. (Tr. 320, 6/15/16).

Furthermore, the ALJ specifically accommodated his asthma in the RFC by requiring that he avoid concentrated exposure to fumes, odors, dust, gases, or poor ventilation and avoid even moderate exposure to extreme heat, extreme cold, wetness, humidity, and vibrations. (Tr. 18). Harrell does not point to any particular evidence in the record suggesting that he is more limited than the ALJ found him to be. Moreover, the handful of "illegible notes" from his provider are from late 2014 and early 2015. (Tr. 163-164, 167-169). The crux of Harrell's claim is that his asthma has significantly worsened since 2014. Yet, the records from 2016 are entirely legible, and Harrell does not specify anything from those records suggesting he is more limited than the ALJ assessed. Rather, he cites his own testimony that his asthma is worsening, that it flares up around chemicals and animals, that he requires six or seven breathing treatment per day, that the treatments cause fatigue, that normal dust in the workplace causes him to only be able to work for half an hour, that physical activity causes his asthma to flare, and

that he only gets 3-4 hours of sleep per night, causing him to nap throughout the day. (ECF No. 13, PageID.647, citing Tr. 284, 290-293; 295-296). But his medical records show little to no sleep disturbance after he began treating for this problem. (Tr. 324, 350, 189, 205). Records also show that he was prescribed Albuterol Sulfate for nebulization (breathing treatments) up to three times per day as needed for wheezing. (Tr. 311). And nothing in the record suggests that his prescription was increased to six or seven times per day. Moreover, Harrell reported on June 12, 2015 that his asthma medication caused no side effects. (Tr. 120). Accordingly, the undersigned finds that the record as a whole supports the ALJ's conclusions regarding Harrell's asthma and there is no error in this regard requiring remand for the recontacting of Harrell's physician.

2.    *Acquiescence Ruling*

Harrell next argues that the ALJ erred in finding under Acquiescence Rule 98-4(6) that there was no significant new material evidence to justify adopting the previous ALJ's RFC. As to his asthma, Harrell contends that the medical documentation from Garden City Medical Center shows a continued worsening of his asthma to the point he was also diagnosed with asthma/COPD. (Tr. 12, Tr. 162-173, 177). On September 17, 2014, he was seen for an upper respiratory infection as well as other symptoms. (Tr. 12, Tr. 169). On this date, Dulera 200 mcg was added to his prescriptions. *Id.* On December 29, 2014, he was seen for

worsening of his asthma. (Tr. 12, Tr. 167). On this date, he was placed on Delsym. *Id*. In addition, he periodically received treatment due to the significance of his asthma flares and he was placed on prednisone 10 mg. (Tr. 12, Tr. 162-173, records dated 8/1/14-6/9/15). Specifically, on March 30, 2015, he was placed on prednisone 10 mg for an asthma flare. (Tr. 12, Tr. 163). Harrell argues, therefore, that the ALJ's conclusion that "the provider generally treated the claimant's asthma by refilling his medication rather than by prescribing different medicine or adjusting the dose of his current medication" is not accurate. Harrell also points out that he was newly diagnosed with COPD, in addition to asthma and he started taking additional asthma medications since the last decision.

Further, Harrell points to an MRI without contrast of his lumbar spine from July 13, 2016, noting that the impression of the radiologist was right paracentral broad-based disc protrusion abutting the thecal sac and right S1 nerve root. (Tr. 197). Although he acknowledges that the ALJ outlines these findings in his decision, he faults the ALJ for his failure to acknowledge that the radiologist stated, "the findings have progressed from a prior study." (Tr. 197). The prior study was conducted on December 27, 2012. *Id*. Therefore, Harrell contends that the MRI represents new and material evidence documenting a worsening of his medical condition since the previous decision of the ALJ dated July 14, 2014.

Based on the foregoing, Harrell contends that the ALJ erred in finding that there was no new and material evidence to change the previous RFC.

In response, the Commissioner first points out that the ALJ noted he was bound by the prior RFC pursuant to the principles set forth in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6), absent evidence of improvement or deterioration in Harrell's condition. (Tr. 18). The Commissioner acknowledges that the Sixth Circuit recently modified the holding of *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), but maintains that because the ALJ here engaged in a fulsome discussion of the evidence that was submitted as part of the current application (Tr. 14-23), the ALJ's decision complies with the analytical framework recently announced in *Earley*, 893 F.3d at 934.

As to the ALJ's substantive decision on the RFC, the Commissioner argues that the evidence shows that Harrell's asthma responded to treatment, and his chest examination at the consultative examination was normal. (Tr. 177, 198). The Commissioner again points out that Harrell was generally assessed with uncomplicated, mild persistent asthma (Tr. 203, 205-206, 208-209, 212), and was able to engage in a wide variety of activities. (Tr. 113-119, 198). The Commissioner points out that the ALJ included more environmental limitations in Harrell's current RFC than in the previous RFC to account for his asthma,

specifically the need to avoid even moderate exposure to temperature extremes, wetness, and humidity (compare Tr. 18 with Tr. 32).

While the 2016 MRI documented a disc protrusion at L5-S1 that abutted the thecal sac and right S1 root, the Commissioner points out that there was no evidence of central canal stenosis or neuroforaminal stenosis. (Tr. 197). The Commissioner argues that the results from an MRI also fail to establish any greater limitations to his RFC. *Flowers v. Comm'r of Soc. Sec.*, 2015 WL 4274961, *4 (E.D. Mich. July 14, 2015) (declining to remand because "the MRI and the CT scan reports provide no insight into what additional limitations Plaintiff may suffer from based on the diagnoses therein" and "[a]t most, Plaintiff leaves the ALJ and the Court to speculate with regard to any possible limitations related to his neck"); *Randolph v. Comm'r of Soc. Sec.*, 2016 WL 7206711, *6 (E.D. Mich. Aug. 16, 2016) (finding no error in the RFC finding where the plaintiff cited only evidence the ALJ specifically considered, and failed to "show how these studies establish[ed] that his ability to stand or walk was more limited than the ALJ found"). The Commissioner also points out that when Harrell saw Dr. Prasad in September 2015, he had a normal gait and no sensory or motor deficits and had excellent function of his upper extremities. (Tr. 177). Further, he was able to engage in many activities, including housework, mowing his lawn, running errands, and going on walks. (Tr. 113-119, 198). Accordingly, the Commissioner

maintains that Harrell has failed to show that he was more limited than the ALJ found him to be. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

As an initial matter, Harrell's first challenge to the ALJ's decision calls into question the ALJ's consideration of alleged changes to his condition under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). Generally, principles of *res judicata* dictate that the administration is bound by a prior decision in a later case involving the same claimant unless a change of circumstances is proven on a subsequent application. *Drummond* at 842 (6th Cir. 1997). In *Drummond*, the Sixth Circuit held that Social Security claimants and the Commissioner are barred from re-litigating issues that were previously determined at the administrative level. *Drummond*, 126 F.3d at 842; *see also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such hearing."). *Drummond* mandates that absent evidence that a claimant's condition has improved, findings issued by an ALJ as part of a prior disability determination are binding on an ALJ in a subsequent proceeding. *Drummond*, 126 F.3d at 841.

Suggesting that the case law that has developed under *Drummond* has interpreted the ruling more broadly than it was intended, the Sixth Circuit clarified the reach of *res judicata* principles in *Earley* – and notably with only a passing

reference to AR 98-4(6)'s "new and material evidence" requirement. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). In *Earley*, the court stated,

> "Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998). Just so here. Had Earley filed a second application for disability benefits for . . . the same period covered by her first application, the ALJ could have correctly rejected it on res judicata grounds and the principles of finality that it supports. But Earley did not do that. She filed a new application for a new period of time. When an individual seeks disability benefits for a distinct period of time, each application is entitled to review. There is nothing in the relevant statutes to the contrary. And res judicata only "foreclose[s] successive litigation of the very same claim." *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

*Id.* at 933. Principles of *res judicata* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.* at 931.

Here, the ALJ issued his decision in 2017 with a pre-*Earley* understanding of *Drummond*. Under *Earley*, since Harrell's current application for benefits covers a period of time not considered by the prior ALJ, albeit commencing only one day later, he was not constrained by the prior ALJ's assessment in fashioning an RFC for the period at issue. Thus, his language suggesting use of a pre-*Earley* rationale for adoption of the RFC raises a yellow flag. Yet, despite the ALJ's use

of the *Drummond* language, he in fact formulated a more restrictive RFC than the previous ALJ found. In the July 14, 2014 decision, the ALJ found that Harrell must merely avoid "concentrated exposure to fumes, odors, gas, and respiratory irritants." (Tr. 32). Whereas here, the ALJ found that he must avoid "even moderate exposure to extreme heat, extreme cold, wetness, humidity, and vibrations" along with the requirement to avoid concentrated exposure to fumes, odors, dust, gases, or poor ventilation. (Tr. 18). The ALJ also added the restriction that Harrell should never work with hazards including dangerous and unprotected machinery or work at unprotected heights. (Tr. 18). Further, the ALJ added the limitations that Harrell requires simple, unskilled work with an SVP rating of one or two, routine work that does not require changes or adaptations in work settings or duties more than once per month, and he requires jobs without production quotas mandating a specific number of pieces per hour or with a down-line co-worker depending on his productivity. (Tr. 18). Thus, despite language suggesting that he was required to adopt the prior RFC, the ALJ here did not adopt the prior RFC.

Furthermore, a thorough review of the ALJ's decision along with the record before him reveals that the ALJ did indeed conduct a "fresh look" at the evidence including evidence of Harrell's abilities and limitations, thus satisfying *Earley*. As discussed in detail above, the ALJ's analysis of Harrell's asthma is supported by

substantial evidence. Harrell did begin new asthma medications, and there is evidence of flare-ups resulting in the occasional need for steroid treatment and medications for respiratory infections. But, the ALJ discussed these records and included additional restrictions in the RFC based on Harrell's asthma.[5]

As to Harrell's limitations from his back condition, his reliance on changes from an MRI do not necessarily show that he is more limited than as found by the ALJ. *Flowers v. Comm'r of Soc. Sec.*, 2015 WL 4274961, *4 (E.D. Mich. July 14, 2015) (declining to remand because "the MRI and the CT scan reports provide no insight into what additional limitations Plaintiff may suffer from based on the diagnoses therein" and "[a]t most, Plaintiff leaves the ALJ and the Court to speculate with regard to any possible limitations related to his neck"); *Randolph v. Comm'r of Soc. Sec.*, 2016 WL 7206711, *6 (E.D. Mich. Aug. 16, 2016) (finding no error in the RFC finding where the plaintiff cited only evidence the ALJ specifically considered, and failed to "show how these studies establish[ed] that his ability to stand or walk was more limited than the ALJ found"). Harrell points to no opinion in the record suggesting he is more limited than the ALJ determined

---

[5] Harrell makes much of the ALJ's statement that the Garden City records did not show changes in medications, when they actually show the addition of Delsym, prednisone, and Dulera to his asthma medication regimen. (Tr. 19; Tr. 162-173, 177). However, the Dulera prescription is evident throughout the record (Tr. 200, 201, 311, 313, 314, 319, 320, 322, 323), and Harrell does not appear to have been directed to take Delsym (which is an over-the-counter cough suppressant) or prescribed prednisone on a long-term basis. Those medications seem to be for occasional use. Accordingly, the undersigned does not find the ALJ's failure to note these medications from this discrete group of medical records to be significant.

based on his back condition. Accordingly, the undersigned finds no error in the ALJ's analysis of Harrell's functional limitations based on his back impairment.

3. *Depression*

Under the regulations, the ALJ must consider whether a claimant's impairment is a medically determinable impairment at step two. *See* 20 C.F.R. § 404.1520. A medically determinable impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Jones v. Comm'r of Soc. Sec.*, 2017 WL 540923, *6 (S.D. Ohio Feb. 10, 2017), report and recommendation adopted, 2017 WL 1196179 (S.D. Ohio Mar. 31, 2017) (citing 20 C.F.R. §§ 404.1505, 404.1508, 404.1520(a)(4)(ii) and 404.1527(a)(1)). "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 404.1521; *see also Tolbert v. Comm'r of Soc. Sec.*, 2012 WL 4176876, at *4 (E.D. Mich. Aug. 27, 2012), report and recommendation adopted, 2012 WL 4165649 (E.D. Mich. Sept. 18, 2012) (citing Social Security Ruling 96-4p, 1996 WL 374187, *1) ("A diagnosis establishes medically determinable impairment only where it is supported by objective medical evidence."). There is no error in failing to consider non-medically

determinable impairments throughout the sequential analysis. *See Jones*, 2017 WL 540923, *6 ("If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC.") (citing *Rouse v. Comm'r of Soc. Sec.*, 2017 WL 163384, *4 (S.D. Ohio Jan. 17, 2017) (stating that a "claimed condition which is not 'medically determinable' need not be considered at all" in determining a claimant's RFC)); *see also* 20 C.F.R. §§ 404.1527(a)(1), 404.1545(a)(2).

Also, at step two of the sequential evaluation process, the ALJ must consider whether a claimant's medically determinable impairment is a severe impairment and whether the impairment(s) meet the twelve-month durational requirement in 20 C.F.R. § 404.1509. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009). The applicant bears the burden of establishing the existence within the administrative record of objective medical evidence suggesting that the applicant was "disabled" as defined by the Act. In order to be classified as severe, an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities, defined in the regulations as "the abilities and aptitudes necessary to do most jobs," include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2)

capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings. Failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation. *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).

Harrell contends that the ALJ erred in not finding his depression severe. He points out that he has been receiving medical treatment for depression for approximately two years and takes medications including Prozac and Depakote. (Tr. 15). He also has difficulty with sleep and treats with Dr. Bhavsar every three months. *Id*. Harrell reported feeling angry with intermittent crying spells and he endures panic attacks. Yet, when asked to describe his panic attacks, he stated that he would feel anxious and nervous but denied any shortness of breath or other symptoms. *Id*. Dr. Bhavsar has diagnosed him with bipolar mood disorder, currently depressed without psychotic features; and anxiety disorder NOS. *Id*. Dr. Bhavsar assessed a GAF score of 45-50. *Id*. The ALJ determined that the consultative examiner who saw Harrell once in January of 2016 and diagnosed him with depression secondary to medical conditions is a more accurate diagnosis than

that provided by his psychiatrist who has seen him for greater than two years. *Id.* The ALJ gave "significant weight to the opinion because it is consistent with normal examination revealing normal concentration, good eye contact, good contact with reality, good memory and recall, and overall normal mental status, based on clinical findings." *Id.* Ultimately, the ALJ also concluded that "the claimant's medically determined mental impairment of depression does not cause more than minimal limitation to the claimant's ability to perform basic mental work activities and is therefore non-severe." (Tr. 16). Harrell argues that the ALJ's decision is inconsistent with his testimony, as well as with the longitudinal record from Dr. Bhavsar. Accordingly, Harrell argues that this matter should be remanded for a proper evaluation of his bipolar disorder and anxiety pursuant to SSR 96-3p.

In contrast, the Commissioner contends that substantial evidence supports the ALJ's determination that Harrell's depression was not a severe impairment, and Harrell has thus failed to carry his burden. More specifically, on examination with Dr. Bray in January 2016, Harrell's communication was normal, his grooming, dress, and hygiene were appropriate and he said his medications had a good effect. (Tr. 188-189). He reported performing daily activities independently, he responded to positive criticism and instructions well and he was cooperative, motivated, verbally responsive, and made good eye contact. (Tr. 189-190).

Harrell's thoughts were logical, organized, simple/concrete, and goal-directed; he was friendly and pleasant; he had good self-esteem; there was no evidence of a thought disorder; and his mood was euthymic. (Tr. 190). Dr. Bray concluded that Harrell would have no difficulty carrying out simple directions, performing repetitive, routine, simple tasks, or comprehending complex tasks. (Tr. 191). He also found Harrell's judgment, behavior, social skills, motivation, and attention/focus were all within normal limits. (Tr. 191). That same month, Dr. Garner reviewed the record on behalf of the Agency and concluded that Harrell did not have a severe mental impairment. (Tr. 235).

The Commissioner also points to treatment notes from Adult Well Being Services from April 2014 through December 2016, which consistently showed that Harrell responded well to treatment. (Tr. 336-354). Harrell reported that his medications helped him. (Tr. 336-354). His examinations consistently showed adequate judgment, impulse control, memory, concentration, and insight. (Tr. 336-354). By January 2015, Harrell said his depression and mood swings were under control and he was volunteering at a church every day for four to six hours. (Tr. 351). Notes from March 2015 state that Harrell's depression had lifted, and he had good self-esteem. (Tr. 349). In May 2016, Harrell was still volunteering at the church, and he said he was concentrating well. (Tr. 341). Based on the foregoing evidence, the Commissioner maintains that substantial evidence supports the ALJ's

determination that Harrell's depression was nonsevere. The Commissioner also argues that any error in finding his depression to be nonsevere would be harmless though, because the ALJ found other severe impairments and considered both severe and non-severe impairments in assessing plaintiff's RFC. (Tr. 13, 17). *Pompa v. Comm'r of Soc. Sec.*, 73 Fed. Appx. 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). Indeed, the ALJ included several mental limitations in Harrell's RFC. (Tr. 18).

The undersigned concludes that since the RFC is supported by substantial evidence, as explained more fully below—and there is no credible evidence of functional limitations greater than those assessed in the RFC caused by depression—any error here is harmless. *Jordan*, 548 F.3d at 423. As previously noted, it is Harrell's burden to establish the existence of disability. *Key v. Callahan*, 109 F.3d 270, at 274 (6th Cir. 1997). And, a diagnosis alone does not address the severity of the condition. *Higgs*, 880 F.2d 860, 863 (6th Cir. 1988). Here, despite finding his depression nonsevere, the ALJ added the limitations that Harrell requires simple, unskilled work with an SVP rating of one or two, routine work that does not require changes or adaptations in work settings or duties more than once per month, and he requires jobs without production quotas mandating a

specific number of pieces per hour or with a down-line co-worker depending on his productivity. (Tr. 18). Consequently, even if the ALJ had determined that Harrell's mental impairments were severe, remand for further analysis would be futile as the ALJ fully considered Harrell's mental impairments and included specific limitations in the RFC to accommodate his impairments. Accordingly, any error is harmless.

### 4. Treating physician opinion

Lastly, Harrell contends that the ALJ violated 20 C.F.R. § 404.1527 by failing to adequately address the opinion of his treating physician, Dr. Bhavsar. Despite the requirements outlined in 20 C.F.R. § 404.1527, Harrell says that the ALJ merely compares Dr. Bhavsar's opinion with the one time consultative examination of Dr. Bray and determines that Dr. Bray is more "believable." He avers that the ALJ does not address the frequency of examination, the nature and extent of the treatment relationship and the specialization of the treating source in determining what weight to give the opinion. Instead, the ALJ finds that Dr. Bhavsar's opinion is outweighed by the opinion of a one-time mental examination from Dr. Bray. Accordingly, Harrell maintains that this matter needs to be remanded for proper evaluation of Dr. Bhavsar's medical records.

In response, the Commissioner first points out that Harrell does not identify a specific opinion but appears to be talking about Dr. Bhavsar's assignment of a

global assessment of functioning ("GAF") score of 45-50 at his initial intake assessment at Adult Well Being Services on April 26, 2014. (Tr. 352-354). The Commissioner maintains that the ALJ properly assigned little weight to this GAF score because it was assigned the first time Dr. Bhavsar examined Harrell. (Tr. 15, 352-354). Thus, although Dr. Bhavsar continued to treat Harrell, he was not a treating physician at the time he rendered the opinion. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx 496, 406 n.10 (6th Cir. 2006) ("[T]he relevant inquiry is not whether Lian might have become a treating physician in the future if Kornecky had visited him again. The question is whether Lian had the ongoing relationship with Kornecky to qualify as a treating physician at the time he rendered his opinion. . . . [V]isits to Lian after his RFC assessment could not retroactively render him a treating physician at the time of the assessment."). Further, the Commissioner argues that the GAF score was inconsistent with Dr. Bhavsar's subsequent treatment notes (Tr. 336-354) as well as his notes from that day, which document cooperative attitude and behavior, normal speech, normal thought processes and content, full orientation, and adequate judgment. (Tr. 353). This was a proper consideration (Tr. 15), as an ALJ may give less weight to a physician's opinion if it is inconsistent with the evidence. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). Moreover, a "GAF score is not particularly helpful by itself." *Oliver v. Comm'r of Soc. Sec.*, 415 Fed. Appx 681,

684 (6th Cir. 2011).  And, to the extent there was a conflict in the evidence, it was for the ALJ to resolve.

To begin with, Harrell's argument is woefully undeveloped.  As noted by the Commissioner, Harrell does not even identify the "opinion" he claims the ALJ neglected to consider.  "Issues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *Id.*  Indeed, the court will not comb the record to determine whether any of Dr. Bhavsar's records contain statements that qualify as opinions as that term is used in the regulations.[6]  Accordingly, the undersigned concludes that Harrell has failed to sufficiently develop this argument and it is, therefore, waived.

---

[6] "The law and the Social Security regulations recognize a difference between a treating physician's treatment notes or comments, and a treating physician's 'medical opinion.'" *Calloway v. Comm'r of Soc. Sec.*, 2016 WL 1165948, at *11 (E.D. Mich. Mar. 1, 2016), report and recommendation adopted,  2016 WL 1161529 (E.D. Mich. Mar. 23, 2016) (citing 20 C.F.R. § 404.1527(a)(2); *Bass v. McMahon,* 499 F.3d 506, 510 (6th Cir. 2007) (finding that a doctor's observations do not qualify as "medical opinions" under the Social Security regulations, and "without more, are not the type of information from a treating physician which will be provided great weight under 20 C.F.R. § 404.1513(b)"); *Bowen,* 478 F.3d at 749 (noting that a treating doctor's general findings are relevant, but not controlling without a residual functional capacity ("RFC") assessment)).  "Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions."  SSR 06-3p, 2006 WL 2329939, at *2 (2006).

To the extent that the Commissioner's guess is correct – that Harrell's argument refers to Dr. Bhavsar's GAF assessment – the undersigned finds no error in the ALJ's decision. GAF scores do not constitute medical opinions. As explained in *Benton v. Comm'r of Soc. Sec.*, 2017 WL 6333862, at *8 (W.D. Mich. Dec. 12, 2017), while the Court must generally defer to the medical opinions expressed by a claimant's care providers, *see King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984), the ALJ is not required "to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 511 (6th Cir. Feb. 9, 2006) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). Indeed, a "GAF score does not reflect a clinician's opinion of functional capacity, and, therefore, an ALJ is not required to consider it when determining a claimant's ability to work." *Shorkey v. Comm'r of Soc. Sec.*, 2014 WL 5361995, at *3 (E.D. Mich. Sept. 12, 2014), report and recommendation adopted, 2014 WL 5362069 (E.D. Mich. Oct. 21, 2014) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (ALJ is not required to consider GAF scores in assessing residual functional capacity)). Thus, the ALJ was not required to defer to the GAF scores provided by Dr. Bhavsar. For this reason, the undersigned finds no reversible error in the ALJ's assessment of the GAF score in this case.

## IV. CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is

**DENIED**, defendant's motion for summary judgment **is GRANTED**, and the

findings of the Commissioner be **AFFIRMED**.

**IT IS SO ORDERED**.

Date:  January 28, 2020                          s/Stephanie Dawkins Davis
                                                 Stephanie Dawkins Davis
                                                 United States District Judge